**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

David Sieverding and Kay Sieverding  )
641 Basswood Ave. Verona, WI 53593 )
608 848 5721                                         )          **11-cv-01032-RBW**
v.                                                        )
United States Department of Justice      )

**Verified complaint amended per Rule 15(a)(1) (Replacing complaint filed**

**6/1/2011)[1][2]**

## JURISDICTION

1.  There is jurisdiction in the District of Columbia under the Privacy Act 5 U.S.C. §

    552a g (5) and also under the Freedom of Information Act.[3]

## PARTIES

2.  The Sieverdings are both U.S. citizens.

3.  The Department of Justice (DOJ) is a very large powerful agency.  The United States

---

[1] The original complaint was improperly assigned to Judge Walton but should have been at least initially assigned to Judge Bates because plaintiffs included a notice of related cases tying it to 09-0562, which Judge Bates adjudicated. (See LCvR 40.5) The Department of Justice is the only defendant. The original 11-cv-01032 complaint was sent by FEDEX tracking number 797155569497 delivered 6/1/2011. A certificate of related cases was included but not docketed. The civil cover sheet was circled for related cases but someone changed that. Someone changed the date signed on the civil cover sheet from 5/31/2011 to 6/1/2011. The original complaint specified DOJ as the defendant in paragraph 3 on page 2. Case 1:11-cv-01032-RBW   Document 1   Filed 06/01/11 Page 2 of 51 The original complaint included summons forms made out to DOJ as shown in one that was attached as an exhibit. Case 1:11-cv-01032-RBW   Document 1-1   Filed 06/01/11   Page 11 of 73. The summons forms plaintiffs received back had been changed from DOJ to Mr. Holder and Mr. Machen. Because this is not a Bivens complaint, and only an agency can be sued under the Privacy Act, the incorrect summons were returned to the court, see document 4.

[2] The Sieverdings have a right to file a short and plain complaint and a right to file an amended complaint before an answer is filed. Therefore, they have a right to have this complaint considered as the effective complaint in this case. DOJ should not respond to the first complaint filed.

[3] All paragraphs should apply to all claims.

RECEIVED
Mail Room

JUN 1 4 2011          1

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

Marshals Service (USMS) is a component of DOJ.

## WHY PREVIOUS SIEVERDING V. DOJ LITIGATION, 09-0562,[4]

## IS NOT CONTROLLING

4. Like 09-0562, this complaint concerns the incarceration of Mrs. Sieverding without a criminal charge for the purpose of controlling and affecting the outcome of third party litigation.

5. The 09-0562 the District Court decision was based on the premise that there was an "authorized law enforcement function" allowing the USMS to arrest and detain persons for the non criminal act of pursuing litigation in Federal courts alleged to be somehow 'contumacious' litigation.

6. In an FOIPA letter dated 4/14/2011, 2011USMS17351,[5] USMS admitted that it has no records of authority for arrest or detention of litigants for engaging in noncriminal 'contumacious' litigation.

7. DOJ misrepresented in 09-0562 that arrest warrants for Mrs. Sieverding were entered into the Warrant Information Network, which conflicts with records released by USMS since then.[67]

8. DOJ misrepresented in 09-0562 that there were no Joint Automated Booking System records created about Mrs. Sieverding,[8] yet released them in December

---

[4] Sieverding v. DOJ 09-0562 -- assigned to Judge Bates.  Plaintiffs voluntarily dismissed 11-090 after DOJ's assigned counsel misrepresented that agencies can exclude subsection e (7) from their responsibilities.

[5] Case 1:11-cv-01032-RBW   Document 1-1   Filed 06/01/11   Page 2 of 73

[6] Case 1:11-cv-01032-RBW   Document 1-1   Filed 06/01/11   Page 7 of 73 JABS record, warrant numbers "none".

[7] Case 1:11-cv-01032-RBW   Document 1-1   Filed 06/01/11   Page 9 of 73 Prisoner Tracking System Record, Warrant number "blank"

[8] Case 1:09-cv-00562-JDB   Document 12   Filed 06/12/2009   Page 2 of 12

2010.[9] In July 2007 they did release a page that showed the same photos of Mrs. Sieverding but it was not identified as a Joint Automated Booking System record on the page and there was no released associated list of records released.

9. In 09-0562, DOJ represented that the Prisoner Tracking System is exempt from 5 U.S.C. § 552a e(5) but did not address the other provisions of the Privacy Act as applicable to the Prisoner Tracking System.[10] DOJ misrepresented that "all claims alleging that inaccurate or extraneous information was included in records related to investigation, arrest, detention, or transportation of Mrs. Sieverding by the USMS should be dismissed under Rule 12(b)(6)"[11] In April 2011, DOJ revealed that on 12/12/2005 the FBI received a 19 page letter from Mr. and Mrs. Sieverding complaining that Mrs. Sieverding was being held without a criminal charge, but that DOJ had decided not to acknowledge their letter.

10. In its responsive pleading to 11-090 (dismissed under Rule 41(a)(1)(A)(i)) DOJ pled that systems of records can be exempted from the requirements of 5 U.S.C. § 552a e(7) by a judge,[12][13][14] when, only Congress can change the statute.

---

[9] Case 1:11-cv-01032-RBW   Document 1-1   Filed 06/01/11   Page 6 of 73
[10] Case 1:09-cv-00562-JDB   Document 8-2   Filed 06/01/2009   Page 23 of 35
[11] Case 1:09-cv-00562-JDB   Document 8-2   Filed 06/01/2009   Page 24 of 35
[12] "In Sieverding V, this Court held that PTS records concerning Mrs. Sieverding are exempt from Subsection (e)(7)." Case 1:11-cv-00090-JDB   Document 12-1   Filed 03/21/11   Page 8 of 14
[13] "The systems of records the Sieverdings appear to attack in this action – with one exception – are the same ones that featured in Sieverding V and are exempt from Subsection (e)(7). 693 F. Supp. 2d at 103-06 (holding that the WIN, PPM, and PTS systems are exempt); see 28 C.F.R. § 16.101(a) (WIN); id. § 101(o) (PTS); id. § 16.101(q) (PPM). Accordingly, whatever records the Sieverdings challenge under Subsection (e)(7) – whether located in the PTS or the JAB system – are exempt." Case 1:11-cv-00090-JDB   Document 12-1   Filed 03/21/11   Page 9 of 14
[14] "On one occasion, the Sieverdings mention the USMS's "Automated Booking System" [sic], which is also exempt from Subsection (e)(7). See 28 C.F.R. § 16.101(s) (exempting

11. In 1830-1831, Judge Peck imprisoned a lawyer named Luke Edward Lawless for writing an article that criticized his rulings. In response Congress limited the contempt powers of the federal courts to criminal contempt only and criminalized the deprivation of rights under color of law, what was later numbered as 18 U.S.C. § 242.

12. In 11-090, DOJ claimed that 18 U.S.C. § 242 is limited to crimes involving racial animus[15] but that is a misrepresentation of the law.  When the crime was created, slavery was still legal in the U.S.  The 1831 amendment to the Judiciary Act was clearly meant to apply to judicial harassment of people such as Luke Edward Lawless and the Sieverdings without regard to a racial or class motivator, although it may also be used to prosecute race related crimes.[16] Furthermore, DOJ prosecutes 18 U.S.C. 242 regularly without identifying the race of the perpetrator or victim. The Supreme Court has extensively discussed the related crime, 18 U.S.C. 241 *Conspiracy Against Rights* and does not require a racial or class motivator.[17]

13.  The U.S. Attorney Criminal Resource Manual (#1739) acknowledges:

"Under 18 U.S.C. § 241, it is a Federal offense to conspire to injure a citizen for having exercised a Federal right or to conspire to intimidate a citizen from exercising a Federal right. One such right is the right to be a witness in a Federal court." [18]

so in previous cases, DOJ contradicted its Criminal Resource Manual by claiming that there is no right to be a witness in a federal court and that a conspiracy to

---

Joint Automated Booking ("JAB") records from 5 U.S.C. § 552a(c)(3) & (4), (d), (e) (1)-(3), (5), (8), and (g))." Case 1:11-cv-00090-JDB   Document 12-1   Filed 03/21/11   Page 9 of 14 footnote 5

[15] Case 1:11-cv-00090-JDB   Document 12-1   Filed 03/21/11   Page 13 of 14

[16] see NYE V. UNITED STATES, 313 U. S. 33 (1941)
http://supreme.justia.com/us/313/33/case.html

[17] UNITED STATES V. PRICE, 383 U. S. 787 (1966)
http://supreme.justia.com/us/383/787/case.html

[18] http://www.justice.gov/usao/eousa/foia_reading_room/usam/title9/crm01739.htm

intimidate a person to deter them from being a witness in a federal court is legal. In previous litigation with the Sieverdings, DOJ also contradicted Supreme Court cases it cites in its Criminal Resource Manual.[19]

14. The term "filing restriction" is not in the Rules of Civil Procedure that are published by the House of Representatives or the Supreme Court.[20] Since both federal district courts and federal appellate courts are bound by 18 U.S.C. section 401 and the Rules Enabling Act, 28 U.S.C. § 2072 neither federal district courts nor federal appellate courts have the authority to create or recognize sanction procedures related to violation of 'filing restrictions'.

## FACTS REGARDING CIVIL CONTEMPT OF COURT HEARINGS

15. The so called "filing restriction" issued out of District of Colorado 02-cv-1950 was not preceded by a motion for an injunction, an injunction bond, an injunction hearing and did not have a separate document as described in Rule 65(d). The 02cv-1950 civil complaint against the City of Steamboat Springs CO et al. was dismissed without an opinion or anything that complied with Rule 52(a)(1).

16. The term "criminal contempt" is not used in any docket entries regarding the Sieverdings.

17. The civil defense lawyers designated as motions to "show cause" why the Sieverdings

---

[19] United States v. Dinome, 954 F.2d 839, 845 (2d Cir.), cert. denied, 506 U.S. 830 (1992); United States v. Thevis, 665 F.2d 616, 626 (5th Cir.), cert. denied, 456 U.S. 1008, and cert. denied, 458 U.S. 1109, and cert. denied, 459 U.S. 825 (1982); or other Federal proceeding, United States v. Smith, 623 F.2d 627, 629 (9th Cir. 1980).
[20] The U.S. House of Representatives Office of Law Revision Counsel has a U.S. code publication with a boolean search facility that allows search with a term such as "filing restriction". See http://uscode.house.gov/search/criteria.shtml

should not be held "in contempt of court".[21]

18. The Sieverdings were told in open Court on 9/02/05 that they were accused of civil contempt, had no right to an attorney and no right to an evidentiary hearing. The witnesses were not sworn. They were not allowed to cross-examine them.  They were not arraigned. There was no bail hearing. There was no speedy trial notice. The presiding judge, Edward Nottingham, said that they would only be allowed a five minute presentation and vowed that he would not listen.[22]

19. The contempt of court hearings were set by minute orders.[23]

20. Mrs. Sieverding was incarcerated by USMS for 124 days based on a minute order.[24]

21. Mrs. Sieverding was released on 1/4/06 based on a "minute entry".[25]

22. Two "warrant[s] of arrest" were issued without appearance by a government attorney or a criminal charge.[26][27]

23. The Sieverdings contacted various DOJ units and complained about being arrested and jailed or threatened with arrest and jail without a criminal charge yet the harassment continued.

24. Public defenders were eventually appointed but Mrs. Sieverding had no written representation contracts with them and did not fill in financial disclosures. There is no record that they were ever paid.

25. In Western Wisconsin a criminal docket was created but it shows opening, pending,

---

[21] District of Colorado 02-cv-1950 documents
496,497,565,566,569,571,573,590,705,777,862,866,
[22] District of Colorado 02-cv-1950 document 884 transcript p. 13
[23] District of Colorado 02-cv-1950 document 575
[24] District of Colorado 02-cv-1950 document 593
[25] District of Colorado 02-cv-1950 document 766
[26] District of Colorado 02-cv-1950 document 792
[27] District of Colorado 02-cv-1950 document 910

and terminated charges as "none".[28]

26. An assistant U.S. Attorney showed up in Western Wisconsin on 5/11/07 and said that "the government isn't a party",[29] but following that USMS detained Mrs. Sieverding for 3 weeks and took her in handcuffs and chains to Colorado accompanied by three armed USMS guards.

27. The District of Columbia, Judge Bates, and DOJ have already conceded that Mrs. Sieverding was imprisoned three times without being charged with a federal offense.

**INJUNCTIVE RELIEF –**

**EXPUNCTION/ EXPUNGEMENT OF JABS AND JDIS RECORDS**

28. DOJ's publication about the Joint Automated Booking System records in the Federal Register says, "Fingerprints and related arrest data are removed from the JABS upon receipt of court orders for expunction when accompanied by necessary identifying information."[30] (See Retention and Disposal c.)

29. The FBI is maintaining a Criminal Justice Information System record that Mrs. Sieverding was guilty and sentenced to 124 days in county jail for "5005 civil contempt"[31] despite the fact that that is not a codified offense recognized by Congress.

30. Mrs. Sieverding did not plead "guilty".

31. There was no sentence as defined in the Federal Rules of Criminal Procedure.

---

[28] District of Western Wisconsin docket 06-mj-00019

[29] Case 1:09-cv-00562-JDB    Document 20-2    Filed 07/08/2009    Page 139 of 196 line 21

[30] http://www.federalregister.gov/articles/2001/04/23/01-9910/privacy-act-of-1974-system-of-records

[31] Case 1:11-cv-01032-RBW   Document 1-1   Filed 06/01/11   Page 4 of 73

32. The USMS is the agency that created the records; Mrs. Sieverding petitioned the USMS to correct the record, but it did not respond as required by 5 U.S.C. § 552a d (2), which requires a response within 10 days to a request to amend a record about a person.

33. According to the FBI website about the Criminal Justice Information Services Record "As a result, the responsibility for authentication and correction of such data rests upon the contributing agency (i.e., police department, county court, etc.). Please contact this agency OR the central repository in the state where the arrest occurred to request a change, correction, or update." (See Frequently Asked Questions # 10.)[32] Since no state criminal justice authorities were involved, and the FBI and U.S. Attorney have stated they were not involved, the only other agency was the USMS. Mrs. Sieverding called the USMS and they said to write to the FOIPA officer, which resulted in no success. USMS has claimed that JABS records cannot be updated, but the JABS web page says otherwise.

34. This Court has statutory authority under 5 U.S.C. § 552a g(1)(D) to order the FBI to expunge both the JDIS and the JABS records.

## CLAIM 1

35. Both the Joint Automated Booking System Records and the Prisoner Tracking System records that USMS created about Mrs. Sieverding and returned for the first time in December 2010 include her social security number.[33][34]

---

[32] http://www.public-record-results.com/fbi-background-check.htm
[33] Case 1:11-cv-01032-RBW   Document 1-1   Filed 06/01/11   Page 7 of 73
[34] Case 1:11-cv-01032-RBW   Document 1-1   Filed 06/01/11   Page 9 of 73

36. Mrs. Sieverding was not informed of the authority under which DOJ had requested

her social security number as required by

5 U.S.C. § 552a "(b) Any Federal, State or local government agency which requests
an individual to disclose his social security account number shall inform that
individual whether that disclosure is mandatory or voluntary, by what statutory or
other authority such number is solicited, and what uses will be made of it."

37. If USMS had informed Mrs. Sieverding that it didn't have a statutory authority for

requesting her social security number, then she probably wouldn't have been arrested

or imprisoned and the damages described below would not have followed.

## CLAIM 2

38. USMS created JABS records about Mrs. Sieverding and none of the information that

it collected about her was necessary to accomplish a statutory purpose or a purpose

created by Executive order. That violated 5 U.S.C. § 552a (e)(1) thereby causing both

Mr. and Mrs. Sieverding damages as described below.

39. 5 U.S.C. § 552a (e) Agency requirements Each agency that maintains a system of

records shall--

(1) maintain in its records only such information about an individual as is relevant and
necessary to accomplish a purpose of the agency required to be accomplished by
statute or by Executive order of the President;

## CLAIM 3

40. USMS did not give Mrs. Sieverding a written document describing the authority and

the routine uses of the information it requested from Mrs. Sieverding and entered into

the Joint Automated Booking System. This violated 5 U.S.C. § 552a (e)(3) thereby

causing both Mr. and Mrs. Sieverding damages as described below.

41. 5 U.S.C. § 552a (e) Agency requirements Each agency that maintains a system of

records shall—

(3) inform each individual whom it asks to supply information, on the form which it uses to collect the information or on a separate form that can be retained by the individual--

(A) the authority (whether granted by statute, or by Executive order of the President) which authorizes the solicitation of the information and whether disclosure of such information is mandatory or voluntary;

(B) the principal purpose or purposes for which the information is intended to be used;

(C) the routine uses which may be made of the information, as published pursuant to paragraph (4)(D) of this subsection; and

(D) the effects on him, if any, of not providing all or any part of the requested

information

## CLAIM 4

42. USMS did not pre-publish in the Federal Register its intention to use the Joint

Automated Booking System to arrest and detain persons who were not subject to a

criminal charge. This violated 5 U.S.C. § 552a (e)(4) (B) and (D) thereby causing

both Mr. and Mrs. Sieverding damages as described below.

43. 5 U.S.C. § 552a (e) Agency requirements

Each agency that maintains a system of records shall-- (4) subject to the provisions of paragraph (11) of this subsection, publish in the Federal Register upon establishment or revision a notice of the existence and character of the system of records, which notice shall include--

(B) the categories of individuals on whom records are maintained in the system;...

(D) each routine use of the records contained in the system, including the categories

of users and the purpose of such use;

## CLAIM 5

44. DOJ did not pre-publish its intention to use the JABS system for incarcerating civil
litigants or other persons without a criminal charge. This violated 5 U.S.C. § 552a
(e)(11) and caused the Sieverdings damages as described below.

45. 5 U.S.C. § 552a (e) Agency requirements

(11) at least 30 days prior to publication of information under paragraph (4)(D) of this
subsection, publish in the Federal Register notice of any new use or intended use of
the information in the system, and provide an opportunity for interested persons to
submit written data, views, or arguments to the agency;

## CLAIM 6

46. Despite DOJ's misrepresentations in 11-090, neither the JABS system or the Prisoner
Tracking System (PTS) is exempt from the agencies responsibility to not hold any
record of how any person exercises their First Amendment rights unless they have
permission from the individual or an authorized law enforcement function.

47. In both the JABS and the PTS system, USMS entered "5005 contempt of court" or
"5005 civil contempt" with the intent that that code refer to the Sieverdings' pursuit of
third party civil lawsuits, therefore USMS violated 5 U.S.C. § 552a (e)(7).

48. 5 U.S.C. § 552a (e) Agency requirements

Each agency that maintains a system of records shall—

(7) maintain no record describing how any individual exercises rights guaranteed by
the First Amendment unless expressly authorized by statute or by the individual about
whom the record is maintained or unless pertinent to and within the scope of an
authorized law enforcement activity;

49. USMS does not have a record of authority to arrest or detain individuals for non-

criminal contumacious litigation.[35]

50. USMS only has authority to arrest and detain individuals for violation of federal

criminal statutes.

51. As published by DOJ in its Criminal Resource Manual:

18 U.S.C. § 241--conspiracy to injure or intimidate any citizen on account of his or
her exercise or possibility of exercise of Federal right (overlap with 18 U.S.C.
§§ 1503, 1510, 1512, and 1513). Under 18 U.S.C. § 241, it is a Federal offense to
conspire to injure a citizen for having exercised a Federal right or to conspire to
intimidate a citizen from exercising a Federal right. One such right is the right to be a
witness in a Federal court, United States v. Dinome, 954 F.2d 839, 845 (2d Cir.), cert.
denied, 506 U.S. 830 (1992); United States v. Thevis, 665 F.2d 616, 626 (5th Cir.),
cert. denied, 456 U.S. 1008, and cert. denied, 458 U.S. 1109, and cert. denied, 459
U.S. 825 (1982); or other Federal proceeding, United States v. Smith, 623 F.2d 627,
629 (9th Cir. 1980). "So is the right to inform Federal officials of violations of
Federal laws." Id.[36]

52. USMS accepted minute orders from former federal judge Edward Nottingham that

referred to the Sieverdings' pursuit of third party civil lawsuits and therefore USMS

violated 5 U.S.C. § 552a (e)(7).

53. USMS is required to accept "lawful orders" from the U.S. Judiciary. Therefore it is

not authorized to accept orders that aren't "lawful".

54. These violations of 5 U.S.C. § 552a (e)(7) were intentional and caused both Mr. and

Mrs. Sieverding damages as described below.

## CLAIM 7

55. DOJ didn't establish rules of conduct for the JABS system that adequately required

that the system be used only in conjunction with a criminal prosecution and that

---

[35] Case 1:11-cv-01032-RBW   Document 1-1   Filed 06/01/11   Page 2 of 73

[36] U.S. Attorneys Manual 1739 Offenses Related to Obstruction of Justice.

caused both Mr. and Mrs. Sieverding damages as described below and violated 5
U.S.C. § 552a e(9).

56. There are also no computer system provisions for making sure that any of the
required steps of a criminal prosecution such as an arraignment, notification of rights,
bail hearing, speedy trial notice, trial within a specified period of time, or sentence
that are attached to the Joint Automated Booking System or the Prisoner Tracking
System.

57. 5 U.S.C. § 552a (e) Agency requirements

(9) Each agency that maintains a system of records shall--(9) establish rules of
conduct for persons involved in the design, development, operation, or maintenance
of any system of records, or in maintaining any record, and instruct each such person
with respect to such rules and the requirements of this section, including any other
rules and procedures adopted pursuant to this section and the penalties for
noncompliance;

## CLAIM 8

58. The JABS records about Mrs. Sieverding are blank in the space for who entered the
"arrested or received information[37] and are also blank for the "role" of the person
entering booking information[38] despite DOJ representations that access to the JABS
system is tightly controlled. Because system access was not adequately restricted and
documented, Mrs. Sieverding was arrested without a criminal charge or an arrest
warrant causing both Mr. and Mrs. Sieverding damages as described below and that
violated 5 U.S.C. § 552a e(10).

59. 5 U.S.C. § 552a e) Agency requirements

Each agency that maintains a system of records shall--(10) establish appropriate
administrative, technical and physical safeguards to insure the security and

---

[37] Case 1:11-cv-01032-RBW   Document 1-1   Filed 06/01/11   Page 6 of 73
[38] Case 1:11-cv-01032-RBW   Document 1-1   Filed 06/01/11   Page 7 of 73

confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained

## CLAIM 9

60. USMS executed arrest warrants on Mrs. Sieverding in 2006 and 2007 causing Mr. and Mrs. Sieverding damages as described below.

61. The JABS records released about Mrs. Sieverding show that there were no warrant numbers for her arrest.[39]

62. The USM Form 129 dated 5/14/2007 released in December 2010 shows that there were no warrant numbers even though Mrs. Sieverding was arrested three times before then and the WIN system generates warrant numbers when warrants are entered and therefore, the arrest warrants could not have been entered into the WIN system.[40]

63. The creation and communication of documents through an alternate system for the purposes of causing a detention without using a system of records disclosed to Congress, i.e. the WIN system, is a violation of 5 U.S.C. § 552a

(e) Agency requirements Each agency that maintains a system of records shall-- (4) subject to the provisions of paragraph (11) of this subsection, publish in the Federal Register upon establishment or revision a notice of the existence and character of the system of records, which notice shall include--(A) the name and location of the system;

## CLAIM 10

64. On multiple occasions to multiple DOJ officials, Mrs. Sieverding requested correction of the various records to show that she had not been charged with a crime, but DOJ

---

[39] Case 1:11-cv-01032-RBW  Document 1-1   Filed 06/01/11   Page 7 of 73
[40] Case 1:11-cv-01032-RBW  Document 1-1   Filed 06/01/11   Page 9 of 73

employees did not respond as required  by 5 U.S.C. § 552a

   (d) Access to records

   Each agency that maintains a system of records shall—


(2) permit the individual to request amendment of a record pertaining to him and--

(A) not later than 10 days (excluding Saturdays, Sundays, and legal public holidays) after ·
   the date of receipt of such request, acknowledge in writing such receipt; and

(B) promptly, either--

(i) make any correction of any portion thereof which the individual believes is not
   accurate, relevant, timely, or complete; or

(ii) inform the individual of its refusal to amend the record in accordance with his

   request, the reason for the refusal, the procedures established by the agency for the

   individual to request a review of that refusal by the head of the agency or an officer

   designated by the head of the agency, and the name and business address of that

   official;


65. DOJ's failure to respond to the Sieverdings' complaints caused Mr. and Mrs.

   Sieverding damages as described below.


**CLAIM 11**

66. The DOJ Data Integrity Committee didn't hold public meetings for many years  thus

   denying rights advocates an opportunity for input into the system specifications of the

   Joint Automated Booking System or any of the other DOJ systems.

67. Stuart Frisch, the secretary of DOJ's Data Integrity Board, wrote to Mrs. Sieverding

   acknowledging that Data Integrity Board doesn't have regular meetings and he has no

records of minutes of any meetings since before 2006.

68. Mr. Frisch supplied a report from the DOJ Data Integrity Board that was supposed to fulfill a statutory requirement. That report was unsigned, there weren't any accompanying minutes and DOJ was initially unsure whether it was written in 2007 or 2006. Unclassified government reports are supposed to be published on-line but this one wasn't.

69. As discussed above, the system has no provisions for making sure that there is an actual criminal charge when a person is arrested and entered into the Joint Automated Booking System. There are also no provisions for ensuring that all of the required steps of a criminal prosecution such as an arraignment, notification of rights, bail hearing, speedy trial notice, trial within a specified period of time, or sentence that are incorporated into the Joint Automated Booking System or the Prisoner Tracking System. Some of the state computer systems for tracking criminals do have those safeguards.

70. There are no provisions in the Civil Division Case File for making sure that the lawyers who are specified on documents as supervisors have actually entered an appearance or are getting any notifications as to what is filed.

71. There are no provisions in the Civil Division Case File for making sure that the local Rules of Civil Procedure are actually followed such as using pinpointed citations to support a motion for summary judgment. That was a problem in Sieverding v. DOJ 09-0562.

72. There are no provisions in the Civil Division Case File for making sure that the statutes are actually quoted correctly. In 09-0562, DOJ claimed that the Prisoner

Tracking System was totally exempt from liability for misuse when actually the Code

of Federal Regulations limits that to instances involving a criminal prosecution.

73. DOJ held Mrs. Sieverding in local government jails that had matching agreements

defining federal prisoner or federal detainee as a person held pursuant to a criminal

prosecution even though Mrs. Sieverding was not criminally prosecuted and therefore

didn't fit into the definition of federal prisoner.

74. 5 U.S.C. § 552a   (u) Data Integrity Boards

   (1) Every agency conducting or participating in a matching program shall establish a
       Data Integrity Board to oversee and coordinate among the various components of
       such agency the agency's implementation of this **section.** (emphasis added)

75. The statute is specific in that the Data Integrity Board is responsible for the entire

"section" not just the subsections related to benefits programs.

76. DOJ's failure to hold meetings of its Data Integrity Board caused rights activists to be

unable to contribute to DOJ computer provisions and that caused damages to Mr. and

Mrs. Sieverding as described below.

## CLAIM 12

77. With respect, new information has recently been released by the FBI showing that

Judge Bates' opinion in 09-0562 was overbroad with respect to exemption of Prisoner

Processing and Prisoner Management/Prisoner Tracking System records from the

Privacy Act.

Kay Sieverding contends that the Court incorrectly dismissed her Privacy Act claims.
She offers that the United States Marshals' Prisoner Processing and Population
Management/Prisoner Tracking Systems -- which contain several purportedly
inaccurate records concerning Ms. Sieverding -- "only appl[y] to prisoners who have
been charged with a crime," and she was never charged with a crime. Kay
Sieverding's Mot. for Reconsideration [Docket Entry 59], at 1 (citing 69 Fed. Reg.

23,213, at 23,214 (Apr. 28, 2004)). But whether Ms. Sieverding's records should be kept in those systems is irrelevant to Ms. Sieverding's Privacy Act claims. The Marshals, pursuant to 5 U.S.C. § 552a(j)(2), have exempted these systems of records from the Privacy Act's maintenance and accuracy requirements. See 28 C.F.R. § 16.101(o)(1), (q)(1). Ms. Sieverding thus cannot challenge records kept in those systems under the Privacy Act. from the Privacy Act's maintenance and accuracy requirements. See 28 C.F.R. § 16.101(o)(1), (q)(1). Ms. Sieverding thus cannot challenge records kept in those systems under the Privacy Act.

78. In April 2011, the FBI released 20 pages of records showing that on 12/12/2005 the FBI in Denver received a 19-page letter from David and Kay Sieverding, sent by DHL Express service on 12/10/05, complaining that Mrs. Sieverding was being held in Clear Creek Jail at that time without a criminal charge.  The records released show initials of multiple people with checks next to Mrs. Sieverding's name, Clear Creek Jail etc. showing that they verified that Mrs. Sieverding was being held without a criminal charge.

79. In his decision dismissing 09-0562, Judge Bates cited and relied on 5 U.S.C. § 552a(j)(2) which reads:

(j) General exemptions

The head of any agency may promulgate rules, in accordance with the requirements (including general notice) of sections 553(b)(1), (2), and (3), (c), and (e) of this title, to exempt any system of records within the agency from any part of this section **except subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11),** and (i) if the system of records is--

(1) maintained by the Central Intelligence Agency; or

(2) maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status; (B) information compiled for the purpose of a criminal investigation,

including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any · stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision. (Emphasis added).

80. Among the subsections which cannot be exempted from the Privacy Act under

552a(j)(2) is

b) Conditions of disclosure

No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be--

(1) to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties;

(2) required under section 552 of this title;

(3) for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D) of this section;

(4) to the Bureau of the Census for purposes of planning or carrying out a census or survey or related activity pursuant to the provisions of Title 13;

(5) to a recipient who has provided the agency with advance adequate written assurance that the record will be used solely as a statistical research or reporting record, and the record is to be transferred in a form that is not individually identifiable;

(6) to the National Archives and Records Administration as a record which has sufficient historical or other value to warrant its continued preservation by the United States Government, or for evaluation by the Archivist of the United States or the designee of the Archivist to determine whether the record has such value;

(7) to another agency or to an instrumentality of any governmental jurisdiction within · or under the control of the United States for a civil or criminal law enforcement activity if the activity is authorized by law, and if the head of the agency or instrumentality has made a written request to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought;

(8) to a person pursuant to a showing of compelling circumstances affecting the health or safety of an individual if upon such disclosure notification is transmitted to the last known address of such individual;

(9) to either House of Congress, or, to the extent of matter within its jurisdiction, any committee or subcommittee thereof, any joint committee of Congress or subcommittee of any such joint committee;

(10) to the Comptroller General, or any of his authorized representatives, in the course of the performance of the duties of the General Accounting Office;

(11) pursuant to the order of a court of competent jurisdiction; or

(12) to a consumer reporting agency in accordance with section 3711(e) of Title 31.

81.  The term "court of competent jurisdiction" is defined in the Federal Rules of

Criminal Procedure 18 U.S.C. § 3127 (2).

82.  The term "court of competent jurisdiction" no longer appears in the Federal Rules of

Civil Procedure.

83. The Code of Federal Regulations show that the Prisoner Processing and Population

Management System is not exempted from 5 U.S.C. § 552a (b). It reads

"  (q) The following system of records is exempt from 5 U.S.C. 552a(c)(3) and (4), (d), (e)(1), (2), (3), (e)(5) and (e)(8) and (g): (1) U.S. Marshals Service Prisoner Processing and Population Management System (JUSTICE/USM005)."[41]

84. None of the subsections of 5 U.S.C. § 552a (b) apply because imprisonment without a

criminal prosecution is not a routine use of the PPM/PMS systems and "court of

competent jurisdiction" exists in the Federal Rules of Criminal Procedure only and is

---

[41] http://cfr.vlex.com/vid/101-marshals-systemslimited-indicated-19675951#ixzz1P5BkjxV5

not used in the Federal Rules of Civil Procedure.

85. DOJ disclosure of records about Mrs. Sieverding in violation of 5 U.S.C. § 552a (b)

caused damages to Mr. and Mrs. Sieverding as described below.

## CLAIM 13

86. The Code of Federal Regulations is clear that the Joint Automated Booking System

and the Prisoner Processing and Population Management System are only exempt

from 5 U.S.C. § 552a (d):

> to the extent that information in the system is subject to exemption pursuant to 5
> U.S.C. 552a(j)(2). Where compliance would not interfere with or adversely affect the
> law enforcement process, the USMS may waive the exemptions, either partially or
> totally.[42]

87. Information is subject to exemption pursuant to 5 U.S.C. § 552a(j)(2) only when the

information relates solely to a criminal investigation or criminal prosecution or

enforcement of the criminal laws:

> (2) maintained by an agency or component thereof which performs as its principal
> function any activity pertaining to the enforcement of criminal laws, including police
> efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities
> of prosecutors, courts, correctional, probation, pardon, or parole authorities, **and**
> which consists of (A) information compiled for the purpose of identifying individual
> criminal offenders and alleged offenders and consisting only of identifying data and
> notations of arrests, the nature and disposition of criminal charges, sentencing,
> confinement, release, and parole and probation status; (B) information compiled for
> the purpose of a criminal investigation, including reports of informants and
> investigators, and associated with an identifiable individual; or (C) reports identifiable
> to an individual compiled at any stage of the process of enforcement of the criminal
> laws from arrest or indictment through release from supervision.

88. Thus, when there is no enforcement of criminal laws, no criminal prosecution, and no

criminal investigation, the Code of Federal Regulations allows exemption of the

---

[42] http://cfr.vlex.com/vid/101-marshals-systemslimited-indicated-
19675951#ixzz1P5EZXCd9

Prisoner Population Management Tracking System and the Joint Automated Booking

System from 5 U.S.C. § 552a (d):

Access to records

Each agency that maintains a system of records shall--(2) permit the individual to
request amendment of a record pertaining to him and--

(A) not later than 10 days (excluding Saturdays, Sundays, and legal public holidays)
after the date of receipt of such request, acknowledge in writing such receipt; and

(B) promptly, either--

(i) make any correction of any portion thereof which the individual believes is not
accurate, relevant, timely, or complete; or

(ii) inform the individual of its refusal to amend the record in accordance with his
request, the reason for the refusal, the procedures established by the agency for the
individual to request a review of that refusal by the head of the agency or an officer
designated by the head of the agency, and the name and business address of that
official;

89. In April 2011, the FBI, a DOJ component, acknowledged that in December 2005 it

received a 19 page letter from Mr. and Mrs. Sieverding, sent by DHL Express next

business day delivery on 12/10/2005, stating that Mrs. Sieverding was being held as a

federal prisoner in Clear Creek Jail without being charged with a federal offense.

However, although several people's initials are on the document with check marks

next to Mrs. Sieverdings' name and address at Clear Creek Jail, DOJ did not respond

within 10 days as required by 5 U.S.C. § 552a (d)(2)(A).  In fact, DOJ did not

acknowledge receipt of the letter for more than 5 years despite FOIPA requests to the

FBI and continued to hold Mrs. Sieverding without a criminal charge for another 23

days, until she was released on conditions that did not comply with the U.S. code.

**CLAIM 14**

90. In September 2006, USMS accepted a minute order from a civil case in Colorado for arrest of Mrs. Sieverding more than 100 miles from Colorado, in violation of the U.S. Code, which specifically confines arrests in civil cases to within 100 miles of a district and which also prohibits arrests for non criminal contempt of court and which also requires a statutory basis for arrest.

91. On 10/24/2006, Mrs. Sieverding sent a fax to the U.S. Attorney in Colorado saying:

> "At the request of Mutual Insurance of Bermuda, I was jailed by Judge Nottingham from 9/2/05 to 1/4/06 without a trial, an evidentiary hearing, an indictment, a finding of contempt in the presence of the court, a sentence, bail, or seeing another judge or lawyer.  Now he has issued a warrant for my arrest that does not cite a law.  I am not accused of any crime nor violating any law.  I am not a fugitive as defined by U.S.C. Title 18 section 3146 but cannot safely visit my very sick 81-year-old father nor live freely with my family. I am 52 and have no criminal record but am treated as a criminal."

92. The fax gave her contact information in Canada as well as her address and telephone number in Wisconsin.

93. The FBI has acknowledged that the U.S. Attorney in Colorado received the fax.

94. Only warrant information network information that is related to a criminal prosecution or criminal investigation is exempted from 5 U.S.C. § 552a (d) so therefore DOJ should have acknowledged to the Sieverdings within 10 days Mrs. Sieverdings' complaint that there was an arrest warrant with no criminal offense charged and if they didn't amend the record, they were required to state why not, all within 10 days.

95. Because DOJ did not promptly acknowledge receipt of the fax or correct the information, Mrs. Sieverding was afraid to go back to Wisconsin and therefore she

missed getting her notice of appeal of the DDC cases timely filed and also was denied

the information to make an effective appeal of the Kansas third party case or an

effective motion for reconsideration of the DDC cases.

## DOJ INTENT

96. In Sieverding v. DOJ 09-0562, DOJ claimed that the imprisonments of Mrs.

Sieverding without a criminal charge were intentional and were intended to affect the

Sieverdings' third party litigation.[43444546]

97. The District of Western Wisconsin stated in their emails regarding Mrs. Sieverding

that they had told "Washington" that they had no records about Mrs. Sieverding after

the dates of records in their system about Mrs. Sieverding showing intent to

participate in a cover-up and deny the Sieverdings relief they had a statutory right to.

98. The FBI made notations on the records dated in 2005 in the records they released in

2011, after they had also stated that they had no records about Mrs. Sieverding,

showing intent to participate in a cover-up and deny the Sieverdings relief they had a

statutory right to.

99. The U.S. Attorney in Colorado claimed to have no records about Mrs. Sieverding but

---

[43] Case 1:09-cv-00562-JDB   Document 25-2   Filed 07/28/09   Page 2 of 3
[44] Case 1:09-cv-00562-JDB   Document 8-2    Filed 06/01/2009   Page 5 of 35
[45] Case 1:09-cv-00562-JDB   Document 54-1   Filed 03/09/10   Page 2 of 9
[46] "To summarize: the Sieverdings sued dozens of entities for damages arising out of the Colorado property dispute.  Sieverding V, 693 F. Supp. 2d at 98 (citing Sieverding v. Colo. Bar Ass'n, 2003 WL 22400218 (D. Colo. 2003)).  After the Colorado federal district court dismissed their complaint, it applied filing restrictions to the Sieverdings that they promptly and repeatedly violated.  See id.  After refusing to comply with court orders, Mrs. Sieverding was arrested and jailed for civil contempt on a number of occasions between 2005 and 2007." Case 1:11-cv-00090-JDB   Document 12-1    Filed 03/21/11   Page 4 of 14

a letter from the FBI in Colorado referred to a fax that Mrs. Sieverding had sent to the

U.S. Attorney in Colorado in October 2006 which that office sent to the FBI. That fax

complained of an arrest warrant being used to deter Mrs. Sieverding from reentering

the country when there was no criminal prosecution or statutory basis. The claim that

the U.S. Attorney in Colorado had no records pertaining to Mrs. Sieverding also

shows intent to participate in a cover-up and deny the Sieverdings relief they had a

statutory right to.

100.    In 11-090, DOJ pled fraudulently in three different places that the Court had

exempted DOJ systems of records from DOJ's obligation to comply with 5 U.S.C. §

552a e (7) even though only Congress has that authority.[47][48][49] This shows intent to

participate in a cover-up and deny the Sieverdings relief they had a statutory right to.

101.    In 09-0562, DOJ provided an affidavit from the FOIPA officer of the USMS,

William Bordley, that claimed that the USMS had looked in all places where records

about Mrs. Sieverding would likely be found and which claimed that the only records

---

[47] "In Sieverding V, this Court held that PTS records concerning Mrs. Sieverding are
exempt from Subsection (e)(7)." Case 1:11-cv-00090-JDB   Document 12-1    Filed
03/21/11   Page 8 of 14

[48] "The systems of records the Sieverdings appear to attack in this action – with one
exception – are the same ones that featured in Sieverding V and are exempt from
Subsection (e)(7). 693 F. Supp. 2d at 103-06 (holding that the WIN, PPM, and PTS
systems are exempt); see 28 C.F.R. § 16.101(a) (WIN); id. § 101(o) (PTS); id. §
16.101(q) (PPM). Accordingly, whatever records the Sieverdings challenge under
Subsection (e)(7) – whether located in the PTS or the JAB system – are exempt." Case
1:11-cv-00090-JDB   Document 12-1   Filed 03/21/11   Page 9 of 14

[49] "On one occasion, the Sieverdings mention the USMS's "Automated Booking System"
[sic], which is also exempt from Subsection (e)(7). See 28 C.F.R. § 16.101(s) (exempting
Joint Automated Booking ("JAB") records from 5 U.S.C. § 552a(c)(3) & (4), (d), (e) (1)-
(3), (5), (8), and (g))." Case 1:11-cv-00090-JDB   Document 12-1   Filed 03/21/11   Page
9 of 14 footnote 5

found were in systems not including the Joint Automated Booking System.[50]   In fact,

by the end of 2004, 9 months before records about Mrs. Sieverding were entered into

the JABS system the majority of all USMS offices had JABS workstations[51] and in

2004, over 90% of all USMS arrests went through JABS.[52] Where Mrs. Sieverding

was arrested and booked in the federal courthouse in Colorado, the USMS Colorado

office was one of the nation's largest USMS offices and was equipped with USMS's

advanced computer and communications systems so Mr. Bordleys affidavit that:

  "The USMS conducted a search for records pertaining to plaintiff, by her name and
  /or personal identifier number, such as a prisoner identification number or social
  security number, pursuant to her request, in the USMS district…of Colorado. The
  USMS searched all locations that could reasonably be expected to maintain
  responsive records on plaintiff". [53]

was perjury or would have been if Mr. Bordley knew what he was signing because in

December 2010 the USMS released JABS records about Mrs. Sieverding.[54]

102.    The original records released that showed her picture and might have been

booking records did not acknowledge that they were JABS records. Furthermore,

when DOJ supplied the affidavit from the FOIPA USMS officer, it did not

acknowledge that the affiant, Mr. Bordley, is blind[55] and did not personally review

---

[50] Case 1:09-cv-00562-JDB    Document 12    Filed 06/12/2009    Page 2 of 12
[51] "*USMS* - JABS became available to the USMS beginning in August 2002. The USMS
had requested that JABS stations be installed on 285 facilities. By the end of November
2004, the JABS program had deployed workstations to 164 of the sites." **The Joint
Automated Booking System Audit Report 05-22   May 2005   Office of the Inspector
General http://www.justice.gov/oig/reports/OBD/a0522/findings.htm#IIb**

[52] http://www.justice.gov/oig/reports/OBD/a0522/findings.htm The Joint Automated
Booking System Audit Report 05-22   May 2005   Office of the Inspector General

[53] Case 1:09-cv-00562-JDB    Document 12    Filed 06/12/2009    Page 2 of 12
[54] Case 1:11-cv-01032-RBW   Document 1-1   Filed 06/01/11   Page 6 of 73
[55] http://www.justice.gov/oip/foia_updates/Vol_XIII_3/page_5.htm, FOIA Focus:
William Edward Bordley, FOIA Update  Vol. XIII, No. 3  1992 "Bordley, who is blind,

the records nor did it identify who reviewed the records.[56]

103.    The assigned lawyer to the Sieverdings' first civil case against DOJ, David

Rybicki, had access to the JABA, WIN, PPM and PTS records about Mrs. Sieverding

and had a duty to verify that the information he was submitting was correct.

104.    The fact that DOJ misrepresented that there were no JABS records, when there

really were, shows intent to participate in a cover-up and deny the Sieverdings relief

they had a statutory right to.

105.    Matthew J. McPhillips for the FBI in Colorado wrote, "[Mrs. Sieverding's]

allegations do not appear to constitute a violation of the Federal Civil Rights criminal

statutes.  Therefore, the FBI does not have the authority to conduct an investigation.

106.    The fax Mrs. Sieverding sent to the U.S. Attorney in Colorado on 10/24/06[57]

specifically stated:

"At the request of Mutual Insurance of Bermuda, I was jailed by Judge
Nottingham from 9/2/05 to 1/4/06 without a trial, an evidentiary hearing, an
indictment, a finding of contempt in the presence of the court, a sentence, bail, or
seeing another judge or lawyer."

And referred to

"U.S.C. Title 18 Part 1 Chapter 73 Section 1512 use of force and intimidation to
delay or deter presentment in court, U.S.C. Title 18 Section 241 Conspiracy to
Deprive Rights, U.S.C. Title 18 Section 242 Deprivation of Rights Under Color of
Law U.S.C. Title Part, or unlawful restraint,"

This again shows DOJ's intent to participate in a cover-up and deny the Sieverdings

---

notes that because FOIA work is by its very nature quite document-intensive, it can be a
difficult area of the law for a nonsighted person. But he works extremely well with a
reader and with the people around him to gain a quick understanding of the information
that he deals with every day."

[56] Case 1:09-cv-00562-JDB    Document 12    Filed 06/12/2009    Page 3 of 12
[57] U.S. Attorney fax 303 454 0404, 303 454 0405

relief they had a statutory right to.

## FACTS ABOUT THE THIRD PARTY LAWSUITS

107. The Sieverdings had a 14th Amendment Claim for the refusal of the City of

Steamboat to enforce the zoning, which caused a retaliatory motive by the president

of the city council, who was the Sieverdings' adjoining neighbor.  DOJ has had the

ability to verify that city officials described a 2000 square foot detached two-story

building as a garage even though it could not be considered a garage.

108. The Sieverdings had a 14th Amendment Claim for the City's threats to criminally

prosecute Mrs. Sieverding because her landscaping employee trimmed without a

permit because the City never issued any trimming permits to anyone and people

routinely "trimmed" including the very same old willow tree and the threat was used

to coerce the Sieverdings to give up their rights to the street adjoining their property

and sell Bennetts' land for $1.

109. The Sieverdings had a 14th Amendment Claim for the City's allowing the

Bennetts to set up aerial fireworks within 75 feet of their property, violating

international fireworks safety standards, and for their allowing the Bennetts to

barricade the road adjoining the Sieverdings' home and threaten the Sieverdings for

walking there because barricade of a road or passageway is a state crime.

110. The Sieverdings had a First Amendment Retaliation Claim in a Non Employment

Context because Mrs. Sieverding was subjected to criminal prosecution without even

a statement of probable cause, without a warrant, and without a criminal summons

signed by a police officer as a direct result of her accurately accusing her neighbors of

violating the zoning.

111.    The Colorado prosecutor prosecuted Mrs. Sieverding without a warrant, a
probable cause hearing, a summons and complaint form signed by a police officer, or
report from the police saying they witnessed a crime. She kept the criminal
prosecution open for 6 months, then dismissed it without the required oral hearing
and refused the Sieverdings' lawyers request for an oral hearing. She made a public
statement that Mrs. Sieverding had a victim but a trial would be too expensive.  The
prosecutor was married to a real estate developer and the Sieverdings' neighbor, who
was the city council president, helped her husband get a provisional permit for a new
ski area for land he then attempted to sell for $20 Million, about seven times cost.

112.    The prosecutor was insured by Underwriters at Lloyds London. She was not
defended by the State of Colorado Attorney General and did not claim an 11th
Amendment right to avoid suit in federal court.

113.    The Sieverdings had a First Amendment Retaliation Claim in a Non Employment
Context because Mrs. Sieverding was subjected to defamation without even a
statement of probable cause as a direct result of her accusing her neighbors of
violating the zoning.

114.    The Sieverdings had some sort of tort claim because the neighbor threatened to
shoot someone who wanted to buy part of their property and as a result they had to
sell it to someone else for less money.

115.    Mrs. Sieverding had a professional defamation claim because the newspaper
repeatedly claimed that city officials had informed Mrs. Sieverding that the
construction of a guest house in an old stable and the construction of the two story
building, which they called a garage, complied with the zoning when both buildings

violated the zoning and the newspaper publisher and newspaper reporters knew that. She had an employment professional reputation interest because her education was in city planning and municipal finance and their publications affected her ability to make a living in those and related fields.

116.    Mrs. Sieverding had a tort claim against her neighbor for claiming that Mrs. Sieverding had trespassed on her property and scared her workers when she had no evidence of that at all and it was a false statement.

117.    Mrs. Sieverding had an abuse of process claim against her neighbor and her neighbor's attorney for getting a permanent restraining order on her based on false pretenses and then for her neighbors using it to harass and threaten her by calling the police requesting arrest of Mrs. Sieverding for doing legal acts including going to the store and crossing the street to go to the bank.

118.    Although the Sieverdings were ridiculed for arguing that bar associations could be liable, the Supreme Court of Canada upheld a pro se complaint against a bar association.[58]

119.    The Sieverdings had a 42 U.S.C. § 1985(2) claim against the various conspirators who harassed and threatened the Sieverdings and requested Mrs. Sieverdings' incarceration without a criminal charge in order to prevent them from getting a hearing on the merits.

120.    In the Sieverdings District of Colorado 02-cv-1950 litigation, the presiding judge Edward Nottingham did not allow a jury trial and didn't write an opinion or a

---

[58] Finney *v.* Barreau du Québec, [2004] 2 S.C.R. 17, 2004 SCC 36
http://scc.lexum.org/en/2004/2004scc36/2004scc36.pdf

judgment that complied with Rule 52(a)(1)

121.    The Sieverdings were subjected to a lot of stress and damage to their reputations
by an order that they pay the lawyers in the Colorado case over $100 K and that order
was issued without a Rule 11(c)(6) order or any order referring to the sanctionable
factors listed in Rule 11(b).

122.    The judge who presided over the Colorado case and ordered Mrs. Sieverding's
imprisonment, threatened both the Sieverdings, and issued sanction orders without
procedure recognized by the House of Representatives of the Supreme Court, Edward
Nottingham, resigned in 2008 after the 10th Circuit published that a woman claimed
that he had requested her to lie to investigators and deny that he had purchased
prostitution services from her, that he had lied to investigators about calling
prostitutes from his court issued cell phone, and that he had threatened another
woman with adverse actions by the USMS after she complained about his parking in
a handicapped parking space.  He has also been publicly identified as a customer of
the Denver Players brothel and a federal search warrant of the brothel's records
produced no record of his having paid for his own services and did produce evidence
of lawyers' credit card. However, DOJ has refused to acknowledge that Nottingham's
misconduct might be at all related to the problems that the Sieverdings had getting a
hearing on the merits or the witness intimidation and witness retaliation they
received.

123.    The Colorado magistrate criticized the Sieverdings for reporting that they had
heard that their neighbor was a convicted drug dealer but in fact he did plead guilty
and served time for conspiracy to sell "hash oil", a restricted substance.  This was not

disclosed when he was president of the city council.

124.   The City of Steamboat officials did not have immunity for acting in a non-legislative capacity to harass the Sieverdings and they did knowingly violate the Sieverdings' constitutional rights in unofficial city policy making thus making the city itself liable.

125.   The City did purchase a $5 Million errors and omissions insurance policy with a $10,000 deductible from Colorado Intergovernmental Risk Sharing Agency.

126.   The Colorado Intergovernmental Risk Sharing Agency doesn't file reports about its claims handling procedures with the State even though these reports are required by statute.

127.   The Colorado Intergovernmental Risk Sharing Agency was never incorporated and is not a government agency.

128.   The Colorado Intergovernmental Risk Sharing Agency doesn't file IRS nonprofit tax reports (form 990 statements) and also doesn't pay federal income tax or even acknowledge that it should pay federal income tax.

129.   A law firm in DC paid a law firm in Colorado over $47,000 to handle the Sieverdings' defamation /false light publicity claims so that no insurance claim would result.

130.   The Colorado newspaper that the Sieverdings sued was insured by an insurance company claiming domicile in Bermuda that claimed to sell insurance across the United States but never filed any papers with any state insurance regulator and never paid any federal income taxes.

131.   The Sieverdings third party complaint was somewhat similar to that in QUIGLEY

v. ROSENTHAL. They sued for $15 Million and were awarded $10.5 Million, which was upheld by the 10th Circuit on appeal. That case involved one of the same defense lawyers and one of the same law firms.

132.    The insurance company associated with the D.C. law-firm in 2004-2005 is still advertising on-line that it is selling insurance throughout the United States from Bermuda. The website advertises that Mutual Insurance sells insurance up to $15 Million in value.  The website claims that Jerome Schaefer is still associated with the insurance company and that claims management is now being handled by a new law firm in the District of Columbia that Mr. Schaefer is associated with.

## DAMAGES TO MR. SIEVERDING

133.    USMS intentional violations of The Privacy Act as described above towards Mrs. Sieverding caused Mr. Sieverding to be too intimidated to pursue his third party civil claims in the District of Columbia (05-01283, 05-02122, and 05-01672) and the City and County of Denver case 05-cv-5485.

134.    USMS intentional violations of The Privacy Act towards Mrs. Sieverding were intentional and so was its effect on Mr. Sieverding's pursuit of his third party claims, violating his Right to Petition and therefore 5 U.S.C. § 552a g (1)(D) allows him to sue DOJ for damages.

135.    Mr. Sieverding also suffered damages of emotional distress, embarrassment, loss of consortium, and out of pocket expenses.

136.    Mr. Sieverdings' damages as expressed in the DDC cases cannot be adequately pursued because so much time has passed and therefore Rule 804(c)(6) *Forfeiture by Wrongdoing* should apply to both the third party defendants and DOJ.

## DAMAGES TO MRS. SIEVERDING

137.   USMS intentional violations of The Privacy Act as described above caused Mrs.
Sieverding to be unable to adequately argue in the DDC third party cases (05-01283,
05-02122, and 05-01672) that the presumption in a res judicata defense is that the
defendants must prove what was decided and when and where it was decided and this
violated her Right to Petition.  USMS kept her from the University of Wisconsin law
library, the Internet and a computer.

138.   USMS intentional violations of The Privacy Act as described above caused Mrs.
Sieverding to not have timely access to a record of a three way long distance informal
ex parte conference in the District of Colorado between the lawyer representing most
of the defendants, the city attorney and the magistrate assigned to the case which was
the only record of the conversation and which supported the Sieverdings' Rule
60(b)(3) petition in an independent action in a nonrendering court (DDC 05-01283) to
set aside the judgment of the District of Colorado 02-cv-1950 and violated her Right
to Petition.

139.   USMS intentional violations of The Privacy Act as described above caused Mrs.
Sieverding to not have timely access to the Internet to prove jurisdiction in the DDC
cases on the basis that an insurance company associated with Jerome Schaefer and/or
O'Brien Butler McConihie & Schaefer, a law firm in D.C., insured the outcome of the
related District of Colorado case 02-cv-1950 and managed or directed that litigation
in such a way as to make sure that there was no decision on the merits and violated
her Right to Petition.

140.   USMS intentional violations of The Privacy Act as described above kept her from

timely finding and arguing references in the DDC 05-02122 establishing that racial animus is not a required factor in a 42 U.S.C. § 1985(2) claim and therefore expanded the pleadings and violated her Right to Petition.

141.   USMS intentional violations of The Privacy Act as described above made Mrs. Sieverding and her documents look unprofessional to the assigned District of Columbia judge.

142.   USMS intentional violations of The Privacy Act as described above caused Mrs. Sieverding to be too intimidated to serve and pursue the District of Kansas case 05-02510 and violated her Right to Petition causing her not only to lose the economic value of that claim but also to be defenseless against additional defamatory and false light publicity publications by the Steamboat Pilot and other publishers.

143.   USMS intentional violations of The Privacy Act as described above caused Mrs. Sieverding to be too overburdened to pursue her contract violation claims against the Colorado Intergovernmental Risk Sharing Agency in the City and County of Denver court, case 05-cv-5485, and violated her Right to Petition and caused her to lose claim to the government employee errors and omissions insurance the organization sold the City of Steamboat Springs Colorado.

144.   Intentional violations of The Privacy Act by USMS and DOJ personnel as described above caused Mrs. Sieverding to be late in filing a notice of appeal of the DDC cases.

145.   Mr. Sieverdings' damages as expressed in the DDC and other cases cannot be adequately pursued because so much time has passed and therefore Rule 804(b)(6) Forfeiture by Wrongdoing should apply to both the third party defendants and DOJ.

146.   USMS intentional violations of The Privacy Act as described above caused Mrs. Sieverding to be too overburdened to pursue her income tax whistle blower claims against the Colorado Intergovernmental Risk Sharing Agency and caused her to lose claim to a reward for reporting the taxes they didn't pay. The organization may no longer have the funds it had a few years ago. Therefore Rule 804(b)(6) Forfeiture by Wrongdoing should apply to both CIRSA and DOJ.

147.   USMS intentional violations of The Privacy Act as described above caused Mrs. Sieverding emotional distress, embarrassment, loss of consortium, loss of liberty, and out of pocket expenses.

## HATFILL SETTLEMENT

148.   The Department of Justice paid Dr. Steven J. Hatfill $5.6 Million for what was claimed to be violations of The Privacy Act.[59][60]

## PREVIOUS DEMANDS

149.   In 09-0562 and 11-090 the Sieverdings demanded $11.6 Million combined, the same amount each that DOJ paid to Dr. Hatfill and less than the value of the lawsuits that DOJ damaged by intervention.

## POSSIBLE CONTRIBUTION FROM 3RD PARTY DEFENDANTS

---

[59] 03-cv-01793-RBW
[60] http://articles.latimes.com/2008/jun/28/nation/na-anthrax28

150.   According to DOJ's criminal resource manual a conspiracy to prevent someone
       from reporting crimes or to prevent someone from being a witness in a federal case is
       a crime as defined by 18 U.S.C. § 241 *Conspiracy Against Rights.*

151.   According to publications by DOJ on its website, no predicate act is required for
       the crime of conspiracy as defined by 18 U.S.C. § 241 *Conspiracy Against Rights* and
       therefore the normal statute of limitations defense is inapplicable until after they
       repudiate the conspiracy which the Sieverdings' third party defendants did not do.

152.   Therefore DOJ should have leverage in getting the third party defendants to
       contribute to settlement of the Sieverdings' Privacy Act complaint.

153.   The third party defendants (Kevin Bennett, Elizabeth Wittemyer, Randall
       Klauzer, the Colorado Bar Association, etc.), their lawyers (Carolyn Lamm, Jerome
       Schaefer, David Brougham, Christopher Beall, Thomas Kelley, Michael McConnell,
       etc.), law-firms (White & Case, Hall & Evans, Faegre & Benson, Lettunich &
       Vanderbloemen etc.), and the insurance companies that paid for defense
       (Underwriters at Lloyds London, Mutual Insurance, Colorado Intergovernmental Risk
       Sharing Agency etc.) have significant financial assets.

154.   The third party defendants shouldn't be able to claim that it is a violation of ethics
       rules to use threat of criminal or administrative sanctions to gain leverage in a civil
       lawsuit when that is what they did to the Sieverdings.

## FREEDOM OF INFORMATION ACT REQUESTS

155.   DOJ should provide a list and description of information provided by USMS to
       Mrs. Sieverding in July 2007.  USMS has previously acknowledged that it knows
       what it released, and therefore must have a list, but the FOIPA office of USMS has

refused to release a list.

156.    In July 2007, Mrs. Sieverding requested the following information, which was

never provided (See Case 1:09-cv-00562-JDB      Document 12      Filed

06/12/2009      Page 10 -11 of 12) and is now requested again.  The USMS has

stated recently that it will not provide any more information:

   a.) Any written or emailed communication with the Verona police department about

       the arrest warrant for Mrs. Sieverding.

   b.) Any documentation that Mrs. Sieverding was ever charged with obstruction.

   c.) Act of Congress under which Mrs. Sieverding arrested, detained, strip-searched,

       fingerprinted, and taken to Colorado in the events in 2005-2006 and 2007

   d.) Warrant for arrest in September 2005

157.    DOJ should provide copies of any and all warrants for arrest of Mrs. Sieverding

       that were entered into the WIN system.  USMS has previously denied this request.

158.    DOJ should provide all records about Mrs. Sieverding in the possession of the

       U.S. Attorney in Colorado.  DOJ has previously said there are none even though Mrs.

       Sieverding was a federal prisoner in Colorado in 2005, 2006 and 2007 and wrote to

       the U.S. Attorney there many times.

159.    DOJ should provide previously withheld records about Mrs. Sieverding in the

       possession of the U.S. Attorney in Western Wisconsin.  Twice they claimed they had

       no records about Mrs. Sieverding even though she had written to them several times

       and she was made a federal prisoner in Western Wisconsin in 2006 and 2007.  Then

       recently they claimed they had 94 pages about Mrs. Sieverding, which included an

       email in which they discussed having told "Washington" that they had no records

about her. 15 pages were totally withheld and additional pages were partially

withheld. She sent in an administrative appeal but they didn't acknowledge receipt.

160.    Mrs. Sieverding sent a priority mail letter to the FBI FOIPA office tracking

number 420 22602 9405 5036 9930 0080 8057 54 which was received by them on

4/27/2011. The letter requested

"FBI copy fax dated 10/24/2006 to the U.S. Attorney's office in Colorado (see 2[nd]
copy enclosed)
Supplemental information and records by Mr. McPhillips in his determination
Copy of Mr. McPhillips letter dated 12/19/2006 (I have the letter but I want to see if
you have it)
Any notes or reports associated with my fax and phone call to Annette in the U.S.
Attorneys office—in order for the fax to go from the U.S. Attorney's office to the FBI
there must have been some sort of written communication.
Notes or reports made by Mr. McPhillips or other agents associated with these
communications."


The FBI has not acknowledged this request even though more than 30 days has

passed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, David Sieverding and Kay Sieverding, pray for judgment

against the Department of Justice as follows:

1. For general damages in an amount according to proof at trial and as permitted by 5

U.S.C. § 552a g(1)(D);

2. For special damages in an amount according to proof at trial and as permitted by 5

U.S.C. § 552a g(1)(D);

3. For prejudgment interest in an amount according to proof at trial;

4. For reasonable attorneys' fees and costs of suit incurred herein pursuant to 5 U.S.C.

§ 552a(g)(4)(B);

5. For expunction/ expungement of the FBI CJIS records and the Joint Automated

Booking System Records USMS created about Mrs. Sieverding and such other and

further relief as the Court may deem just and proper.

Pursuant to 28 U.S.C. § 1746, we declare under penalty of perjury that the foregoing
is true and correct to the best of our knowledge and belief.

Respectfully,

David Sieverding 6/13/2011          Kay Sieverding 6/13/2011
641 Basswood Ave. Verona WI 53593 608 848 5721
Sent by Express Mail tracking # 995 097 267

**Attachment:  Certificate of Related Case stating relationship to 09-0562 and 11-090.**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

David Sieverding and Kay Sieverding    )
641 Basswood Ave. Verona, WI 53593  )
608 848 5721                                          )          **11-cv-01032-RBW**
v.                                                         )
United States Department of Justice       )

Certificate of Service of Verified complaint amended per Rule 15(a)(1) (Replacing

complaint filed 6/1/2011) and statement of related cases.

On 6/13/2011, we sent a copy of the amended complaint and statement of related cases to

DOJ at the following address by priority mail tracking # 420 20001 9405 5036 9930 0129

4214 40


U.S. Attorney
United States Department of Justice
Civil Division
555 4th Street N.W.
Washington, D.C. 20001

Kay Sieverding
6/13/2011

42