UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DAVID AND KAY SIEVERDING,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF JUSTICE,**<br><br>Defendant. | Civil Action No. 11-1032 (JDB) |

## MEMORANDUM OPINION

Kay and David Sieverding, proceeding pro se, have sued the United States Department of Justice ("DOJ" or "Department") alleging violations of the Privacy Act, 5 U.S.C. § 552a et seq., as well as a number of other claims. Currently before the Court is the Department's motion to dismiss the Sieverdings' amended complaint in part or in the alternative for partial summary judgment.[1] Also pending are the Sieverdings' motion for partial summary judgment and an array of miscellaneous motions. For the reasons detailed below, the Court will grant the Department's motion to dismiss in part or in the alternative for partial summary judgment and will deny the Sieverdings' motion for partial summary judgment and their miscellaneous motions.

## BACKGROUND

Given the Sieverdings' extensive litigation history, the factual background can be stated briefly. The Sieverdings originally sued dozens of individuals and entities in 2002 for damages

---

[1] The DOJ's motion is not directed to the Sieverdings' FOIA claims set out in paragraphs 155-60 of their amended complaint. See ECF No. 16 at 1 n1.

arising out of a property dispute with their neighbors.  See Sieverding v. Colo. Bar Ass'n, 02-M-1950, 2003 WL 22400218, at *1 (D. Colo. Oct. 14, 2003) ("Sieverding I").  The district court, adopting a magistrate judge's recommendation, dismissed the Sieverdings' complaint in full and the Tenth Circuit affirmed.  See Sieverding v. Colo. Bar Ass'n, 469 F.3d 1340, 1342-43 (10th Cir. 2006) ("Sieverding II").  In light of what it described as the Sieverdings' "abusive litigation practices," the district court also imposed filing restrictions on the Sieverdings.  Id. at 1344-45 (affirming filing restrictions in part).  Kay Sieverding apparently failed to comply with these filing restrictions, and was arrested and jailed for civil contempt several times between 2005 and 2007.  See id. at 1343; Sieverding v. Colo. Bar Ass'n, 244 Fed. Appx. 200, 205 (10th Cir. 2007).  In this case, as well as in other cases, the Sieverdings once again allege dozens of Privacy Act and other violations stemming from these arrests and incarcerations.[2]  See Sieverding v. Am. Bar Ass'n, 439 F. Supp. 2d 111 (D.D.C. 2006) ("Sieverding III");  Sieverding v. Dep't of Justice, 693 F. Supp. 2d 93 (D.D.C. 2010) ("Sieverding V").  On March 25, 2011, the Sieverdings filed a suit raising the same issues as addressed here, but they later voluntarily withdrew their claims.  See Sieverding v. Dep't of Justice, Civ. Act. No. 11-90 (D.D.C.).  Subsequently, this action was filed.

---

[2] The number of cases brought by the Sieverdings arising out the 1992 property dispute is too many to mention.  Indeed, they have filed dozens of cases in federal court over the years, many frivolous or even sanctionable.  See, e.g., Sieverding v. Colo. Bar Ass'n, 310 Fed. Appx. 229, 232 (10th Cir. 2009) ("This appeal is frivolous and represents another example of the Sieverdings' abusive litigation practices."); Sieverding v. Colo. Bar Ass'n, 126 Fed. Appx. 457, 459 (10th Cir. 2005) (describing the "Herculean" feat of a magistrate judge in "ma[king] as much sense as possible of [the Sieverdings'] numerous complaints and amended complaints"); Sieverding v. Am. Bar Ass'n, 469 F. Supp. 2d 224, 229 n.4 (D.D.C. 2006) ("Sieverding IV") (declaring "[f]or its part, this court's involvement in these frivolous cases is finished"); Sieverding V, 693 F. Supp. 2d at 101 n.3 (describing Sieverdings' filings "totaling well over a thousand pages" and "the literally dozens of 'claims'" that were "cryptic and incomprehensible").

**STANDARD OF REVIEW**

All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555-56.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); accord Atherton v. Dist. of Columbia Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009).  A claim to relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.  This amounts to a "two-pronged approach," under which a court first identifies the factual allegations entitled to an assumption of truth and then determines "whether they plausibly give rise to an entitlement to relief." Id. at 1950-51.

The notice pleading rules are not meant to impose a great burden on a plaintiff. See Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-13 (2002).  When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should

be liberally construed in his or her favor.  See Leatherman v. Tarrant County Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bur. of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979).  The plaintiff must be given every favorable inference that may be drawn from the allegations of fact.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  Moreover, "[c]ourts must construe pro se filings liberally." Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999).  However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint."  Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Nor does the court accept "a legal conclusion couched as a factual allegation," or "naked assertions devoid of further factual enhancement."  Iqbal, 129 S. Ct. at 1949-50 (internal quotation marks omitted); see also Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 17 n.4 (D.C. Cir. 2008) (the D.C. Circuit has "never accepted legal conclusions cast in the form of factual allegations" (internal quotation marks omitted)).

    Along with its motion to dismiss in part the Sieverdings' amended complaint, the Department has moved in the alternative for partial summary judgment under Federal Rule of Civil Procedure 56.  The Department has offered affidavits in support of its motion, and the Sieverdings have filed voluminous documentation to support their position.  When, on a motion to dismiss, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); see also Yates v. District of Columbia, 324 F.3d 724, 725, (D.C. Cir. 2003).  To the extent the Sieverdings' allegations may be resolved on the evidentiary record before it, then,

the Court will treat the government's motion to dismiss in part as one for partial summary judgment.

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" that it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); see Celotex, 477 U.S. at 323.

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## ANALYSIS

As this Court previously observed, the Sieverdings' pleadings are "verbose, prolix and

virtually impossible to understand." Sieverding V, 693 F. Supp. at 101 (citing and quoting Sieverding I, 2003 WL 22400218, at *1). And at the outset, the Court again notes that David Sieverding lacks standing to sue on behalf of his wife because "ordinarily, a plaintiff 'must assert his own legal interests, rather than those of third parties.'" See Sieverding V, 693 F. Supp. 2d at 101 (citing Fair Emp't Council v. BMC Mktg. Corp., 28 F.3d 1268, 1277 (D.C. Cir. 1994), and quoting Gladstone, Realtors v. Bellwood, 441 U.S. 91, 100 (1979)). Accordingly, any reference to "Sieverding" or defendant is to Kay Sieverding.

## I.   Res judicata

The DOJ argues that many of Sieverding's claims are barred by res judicata because they were either raised or could have been raised in Sieverding V. Def.'s Mot. to Dismiss at 7. The Court agrees that at least some of the claims appear to be barred.

"The doctrine of res judicata prevents repetitious litigation involving the same course of action or the same issues." I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co., 723 F. 2d 944, 946 (D.C. Cir. 1983). While generally pleaded as an affirmative defense in an answer, a res judicata argument can be raised in a motion to dismiss when the "relevant facts are shown by the court's own records, of which the court takes notice." Nader v. Democratic Nat'l Comm., 590 F. Supp. 2d 164, 169 (D.D.C. 2008). Here, the arguments are made with respect to Sieverding V. Accordingly, it is entirely appropriate to consider the res judicata arguments in the context of a motion to dismiss.

Res judicata is "usually parsed into claim preclusion and issue preclusion." I.A.M. Nat'l Pension Fund, 723 F. 2d at 946. Claim preclusion "prevents parties from relitigating issues they raised or could have raised in a prior action on the same claim." NextWave Pers. Commc'ns, Inc.

v. FCC, 254 F.3d 130, 143 (D.C. Cir. 2001).  Under claim preclusion, "a final judgment on the merits in a prior suit precludes subsequent relitigation of issues actually litigated and determined in the prior suit, regardless of whether . . . [they are] based on the same cause of action." Id. at 147 (citing I.M.A. Nat'l Pension Fund, 723 F.2d at 947).  In other words, "'claim preclusion forecloses all that which might have been litigated previously,' while issue preclusion 'prevents the relitigation of any issue that was raised and decided in a prior action.'" Sieverding II, 439 F. Supp. 2d at 116.

    As in Sieverding V, this case is brought against the Department of Justice and the two suits clearly "share a common nucleus of facts."  Moreover, in Sieverding V the Sieverdings litigated their claim to a final judgment on the merits.  See Sieverding V, 693 F. Supp. 2d at 111 n. 17 ("The Sieverdings are advised that this is the final decision of the Court.  Hence, they may appeal it."); see also Order, 10-5149 (D.C. Cir. Oct. 20, 2010) (granting summary affirmance). Finally, the amended complaint here is based on the same series of events as the prior cases filed by the Sieverdings, and involves many of the same types of claims.  For example, Sieverding once again complains about various Privacy Act violations based on information about her First Amendment activities purportedly kept in the Prisoner Tracking System ("PTS"), see Am. Compl. ¶¶ 46-54; Sieverding V, 693 F. Supp. 2d at 105 (discussing same claims).  These same claims based on records she already received from the PTS are barred.  Sieverding also continues to make other claims related to her arrests and incarcerations, which occurred between 2005 and 2007.  These would also appear to be barred. See Walker v. Seidman, 471 F. Supp. 2d 106, 114 n. 12 (D.D.C. 2007) ("[C]ourts may dismiss sua sponte when they are on notice that a claim had been previously decided because of the policy interest in avoiding unnecessary judicial waste.")

(citing Arizona v. California, 530 U.S. 392, 412 (2000)).

However, Sieverding's claims insofar as they involve documents and information that she received after the resolution of Sieverding V would not be barred. Her current complaint and filings refer to documents she obtained in December 2010 -- after final judgment was entered in Sieverding V and, indeed, after October 2010, when the D.C. Circuit summarily affirmed the judgment. These records appear to have come from the Joint Automated Booking System (JABS).[3] Sieverding attaches to her complaint a document from JABS that lists "12/6/2010" in the lower right-hand corner, which suggests that Sieverding did receive some documents in December 2010. A letter from the United States Marshals Service ("USMS"), however, raises a question as to whether additional documents could have even been produced. See Ex. AA to Pl.'s Mot., ECF No. 20, Letter from USMS (Mar. 24, 2011) ("By letter dated July 16, 2007, the USMS released all records in our possession . . . [w]e have no additional records regarding you."). Based on the uncertainty in the record, the Court would be reluctant to bar Sieverding's claims regarding JABS or other December 2010 documents she received on res judicata grounds. Ultimately, however, Sieverding's assorted claims of Privacy Act violations are still unavailing, for the reasons explained below.

**II.    Privacy Act**

    **A.    Statutory Background**

The Privacy Act, 5 U.S.C. § 552a et seq., "imposes a set of substantive obligations on agencies that maintain systems of records." Skinner v. Dep't of Justice, 584 F.3d 1093, 1096

---

[3] JABS is administered by the USMS. See Exemption of Records Systems Under the Privacy Act, Exemption of U.S. Marshals Service Systems, 28 C.F.R. § 16.101(s).

(D.C. Cir. 2009). It also "'authorizes civil suits by individuals . . . whose Privacy Act rights are infringed.'" Wilson v. Libby, 535 F.3d 697, 707 (D.C. Cir. 2008) (quoting Sussman v. United States Marshals Serv., 494 F.3d 1106, 1123 (D.C. Cir. 2007)). Under the Act, every agency that maintains a system of records may only keep "such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President." 5 U.S.C. § 552a(e)(1). Agencies must also "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." § 552a(e)(5). With limited exceptions, agencies are also prohibited from maintaining records "describing how any individual exercises rights guaranteed by the First Amendment." § 552a(e)(7). Individuals may petition agencies to amend records concerning the individual that are not "accurate, relevant, timely, or complete." § 552a(d)(2). If an agency refuses to amend an individual's record, that person may sue in federal court for de novo consideration of whether amendment is warranted. § 552a(g)(1)(A)-(2)(A).

The Privacy Act also restricts the disclosure of records. Subject to various exceptions, "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency," without the consent of the individual to whom the record pertains. § 552a(b). Also, for many disclosures, the agency must "keep an accurate accounting of the date, nature, and purpose of each disclosure of a record . . . and the name and address of the person or agency to whom the disclosure is made." § 552a(c)(1).

"The obligations created by the Act are not absolute, however. The Act permits agencies to exempt certain systems of records from some of its requirements." Doe v. FBI, 936 F.2d

1346, 1351 (D.C. Cir. 1991). Specifically, any agency "which performs as its principal function any activity pertaining to the enforcement of criminal laws" may exempt from the Act's maintenance and amendment requirements (among others) any system of records consisting of:

> (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a(j)(2).

### B.     Claims

Kay Sieverding sets forth a laundry list of Privacy Act claims. Many of these claims focus on information kept (or not kept) in JABS. Indeed, Sieverding states that eleven of the fourteen claims involve JABS. ECF No. 30 at 1. Ultimately, these claims are all without merit and will be dismissed.

Claim one alleges that records in JABS and the Prisoner Tracking System (PTS) included Sieverding's social security number in violation of "5 U.S.C. § 552a(b)." It states that "[i]f USMS had informed Mrs. Sieverding that it didn't have statutory authority for requesting her social security number, then she probably wouldn't have been arrested." Am. Compl. ¶¶ 35-37. However, as the DOJ rightfully points out, the provision cited by Sieverding is not codified in 5 U.S.C. § 552a, but is instead based on an uncodified historical and statutory note. See Def.'s Mot. to Dismiss at 8; see also Pub. L. No. 93-579 § 7(a)(1), 88 Stat. 1895, 1909. Moreover, Sieverding's contention that some causal link exists between her arrest and the inclusion of her

social security number on JABS or PTS records is conclusory and illogical.

Several of Sieverding's claims also fail because JABS is exempt from the Privacy Act provisions that Sieverding asserts were violated. See 28 C.F.R. § 16.101(s). Claims two and three allege violations of 5 U.S.C. § 552a(e)(1) and (e)(3) -- that the records maintained in JABS about Sieverding were irrelevant and unnecessary to accomplish an agency purpose, and that USMS failed to give Sieverding a document describing the agency's routine uses of information entered into JABS. Am. Compl. ¶¶ 38-41. Claim ten states that the DOJ failed to respond to Sieverding's request for "correction of the various records to show that [Sieverding] had not been charged with a crime," in violation of § 552a(d). Am. Compl. ¶¶ 64-65. But, as Sieverding V explained, the only relevant records generated were contained in record systems that are exempt from § 552a(d). See Sieverding V, 693 F. Supp. 2d at 103; 28 C.F.R. § 16.101. Sieverding provides no other facts, nor does she point to any other record systems to find otherwise. In claim thirteen, Sieverding maintains that because she has not been charged with a criminal offense, her Warrant Information ("WIN"), Prisoner Processing and Population Management ("PPM"), and JABS records are not exempt from § 552a(d). This claim is nearly identical to the one addressed by the Court in Sieverding V. There, the Court stated that WIN, PPM, and PTS were exempted pursuant to § 552a(j)(2), which allows an agency that "performs as its principal function any activity pertaining to the enforcement of criminal laws" to exempt certain systems of records. 693 F. Supp. 2d at 102, 104. The same reasoning applies here and extends to JABS.

Claims six and twelve attack the applicability of exemptions. Claim six contends that JABS and PTS are not exempt from the requirement of § 552a(e)(7), which provides that no records describing First Amendment activities shall be kept by an agency. This Court previously

ruled that even assuming that the USMS kept records about Sieverding's First Amendment activities in the PTS, those records were exempt from § 552a(e)(7).  See Sieverding V, 693 F. Supp. 2d at 105.  The same reasoning applies here with respect to JABS.  In claim twelve, Sieverding challenges the rulings on exemption from the Privacy Act made by this Court in Sieverding V on PTS records.  However, Sieverding had an opportunity to move for reconsideration of the Court's rulings in that action, and availed herself of it.  She also appealed without success to the D.C. Circuit.  See Sieverding V, ECF Nos. 59, 76.  The Court will not revisit those rulings here.

Sieverding makes various Privacy Act claims relating to her frequently-litigated argument that records were improperly kept in some way because of the nature of her arrest -- which arose out of a civil contempt charge rather than a criminal offense.  In claims four, five, and nine, Sieverding claims violations of § 552a(e)(4) and(e)(11).  Under § 552a(e)(4), an agency is required to "publish in the Federal Register upon establishment or revision a notice of the existence and character of the system of records."  And § 552a(e)(11) requires notice to be published in the Federal Register at least 30 days prior to notice given under § 552a(e)(4) "of any new use or intended use of the information in the system."  Moreover, "interested persons" shall be given an opportunity to submit "written data, views, or arguments to the agency." § 552a(e)(11).  Sieverding claims that DOJ violated these notice requirements by failing to publish its intent to use JABS to arrest and detain persons not subject to criminal charges.  Am. Compl. ¶¶ 42-45.  She also asserts that JABS and WIN records failed to show any warrant numbers for her arrest.  Id. ¶¶ 60-63.

However, there was no violation of § 552a(e)(4)'s notice requirement as to the purpose

and use of JABS.  The DOJ published notice in the Federal Register on April 13, 1995 explaining that the "purpose of the JABS system is to enable Federal, State, and local agencies which conduct arrests and/or booking activities to store such data . . . to eliminate duplication efforts among multiple law enforcement agencies . . . and thereby share 'realtime' booking and arrest data within a region."  Notices, Department of Justice, Privacy Act of 1974:  New Statement of Records , 60 FR 18853-02 (Apr. 13, 1995) ("Notice").  Because JABS was not limited to arrests for a criminal charge, there has been no "new use" of JABS relevant to Sieverding's claim to trigger § 552a(e)(11).  In addition, Sieverding's assertion that "there were no warrant numbers" in her JABS records does not state a § 552a(e)(4) violation.  The notice and publication obligations set forth in that provision do not extend to the contents of the individual records challenged by Sieverding.  And her claim that the lack of warrant information evidences "[t]he creation of communication of documents through an alternative system" is unfounded and unsupported by the record.  Therefore, Sieverding's claims (four, five and nine) asserting violations of § 552a(e)(4) and (11) will be dismissed.  For similar reasons, Sieverding's claim seven -- which asserts a violation of § 552a(e)(9) because the "DOJ didn't establish rules of conduct for the JABS system that adequately required that the system only be used in conjunction with a criminal prosecution" -- is without merit.  This claim is inconsistent with JABS' actual use and purpose, which is to centralize booking and arrest information.  See Notice.

      Claims eight, eleven, and fourteen fare no better.  They are largely vague and incomprehensible.  Claim eleven states that in violation of § 552a(u) the DOJ's Data Integrity Committee failed to hold public meetings "for many years thus denying rights advocates an opportunity for input into the system specifications of the [JABS] or any other DOJ systems."

Am. Compl. ¶¶ 66-68 & 74-76.  Again, the basis for Sieverding's complaint is that JABS "has no provisions for making sure that there is an actual criminal charge" before information about the person is entered.  Am. Compl. ¶ 69.  But Sieverding fails to offer any facts showing how a purported failure by the DOJ Data Integrity Committee to hold meetings harmed her.  And as previously discussed, the stated purpose of JABS is to maintain centralized information about individuals who go through the booking and arrest process.  Within this claim, Sieverding also raises various grievances regarding "the Civil Division Case File" though there is no further explanation of this reference. She never explains what the "Civil Division Case File" is, nor does she match her statements with any Privacy Act violation.  The only cited provision is § 552a(u), which is completely inapposite because it refers to the establishment of data integrity boards by agencies.

     Claim eight is similarly bewildering. It states that JABS records "are blank in the space for who entered the 'arrested or received information' and are also blank for the 'role' of the person entering booking information," purportedly in violation of § 552a(e)(10).  Am. Compl. ¶¶ 58-59.  Pursuant to § 552a(e)(10), an agency must "establish appropriate . . . safeguards to insure the security and confidentiality of records . . . which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained."  There is no relationship between Sieverding's statement that certain entries in the JABS records contained blank spaces, and § 552a(e)(10)'s charge to agencies to establish safeguards to ensure the security and confidentiality of record.  In short, this claim is not viable. See Iqbal, 129 S. Ct. at 1949; Crowder v. Bierman, 713 F. Supp.2d 6, 9 (D.D.C. 2010).

     In claim fourteen, Sieverding asserts that the DOJ violated § 552a(d) because the USMS

"accepted a minute order" from a civil case for Sieverding's arrest; that "there was an arrest warrant with no criminal offense charged"; and that DOJ was required to amend the record, or explain why it had not done so within ten days. Am. Compl. ¶¶ 90-95. However, it is not clear what record forms the basis of her § 552a(d) complaint, nor what record Sieverding seeks to amend. Accordingly, in these claims -- eight, eleven, and fourteen -- Sieverding cannot even satisfy the requirements of Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," much less the requirement that such a claim be "plausible on its face." See Crowder, 713 F. Supp. 2d at 9 (citing Iqbal, 129 S. Ct. at 1949 and disposing of vague and incomprehensible allegations on the basis of Fed. R. Civ. P. 8 and 12(b)(6)); see also Sieverding V, 693 F. Supp. 2d at 106.

      Sieverding also requests injunctive relief pursuant to § 552a(g)(1)(D), and seeks a court order that her Justice Detainee Information System ("JDIS") and JABS records be expunged.[4] Under the cited provision, a person can bring a civil action against the agency when it fails to comply with a provision of the Privacy Act so as to have an adverse effect on that individual. See § 552a(g)(1)(D). Sieverding claims that the records are inaccurate because "5005 civil contempt . . . is not a codified offense recognized by Congress" and because she "did not plead 'guilty.'" Am. Compl. ¶¶ 29-30. However, even accepting Sieverding's facts as true, the use of "5005 civil contempt" as a code in a record does not make it inaccurate. And, as this Court previously stated, "the Marshals' authority plainly extends to the non-criminal matter -- enforcement of a civil bench warrant." Sieverding V, 693 F. Supp. 2d at 106. In short,

---

[4] Sieverding alleges this claim against the FBI. However, as represented by the DOJ, these systems are maintained by the USMS. The Court construes Sieverding's claim accordingly.

Sieverding could not claim any error in records which reflect a civil contempt charge, nor could she claim any facts that would lead this Court to conclude that she suffered an "adverse effect" from those records. Hence, there is no basis for granting Sieverding's request to order the expungement of JDIS and JABS records.

### III.     Sieverding's Partial Summary Judgment Motion

Sieverding's motion for partial summary judgment, ECF No. 14, is muddled and incomprehensible. However, from what the Court can glean, it appears that this motion rehashes the same arguments previously made by Sieverding -- that she was improperly arrested and incarcerated by the USMS for civil contempt. Insofar as they are not barred, they remain non-meritorious. Her Memorandum of Points and Authorities and her Statement of Material Facts state the following, which seem to be the basis for her motion: "this Court cannot recognize a federal contempt action that is not conducted completely as 'criminal contempt'"; her detention based on a minute order "without criminal procedure" is prohibited by the Administrative Procedure Act; and the DOJ unlawfully disseminated criminal records about Sieverding. See generally Pl.'s Mem. Op. for Partial Summ. J; Statement of Material Facts ¶¶ 3, 21-23, 32-33. Sieverding also asserts other facts and arguments, which have already been addressed in Sieverding V and will not be reconsidered here.[5]

Sieverding's contention that federal courts can only recognize criminal contempt is unfounded. It is well-established that civil contempt is a vehicle by which courts can ensure that contemnors abide by court orders. "Civil contempt differs from criminal contempt in that it seeks

---

[5] These include claims based on the USMS's transportation of Sieverding in handcuffs, and that the USMS exceeded its authority in incarcerating her, even though she had not been charged with a crime. See Sieverding V, 693 F. Supp. 2d at 108-112.

only to 'coerc[e] the [contemnor] to do' what a court had previously ordered him to do." Turner v. Rogers, 131 S. Ct. 2507, 2516 (2011); see also Cunningham v. Hamilton Cnty., Ohio, 527 U.S. 198, 207 (1999) ("Civil contempt is designed to force the contemnor to comply with an order of the court.") (internal citation omitted).  In addition, Sieverding's claim that her detention was based on a minute order and "without criminal procedure" is unfounded because such procedures are inapplicable to civil contempt.  Likewise, she has failed to claim any cognizable violation of the Administrative Procedure Act on that ground.  Finally, Sieverding's claim that the DOJ unlawfully disseminated criminal records about her is unsupported by anything in the record. She claims that the "criminal records" at issue were "possession of her body, causing some people to notice that she was missing" and her public appearances "in handcuffs and sometimes in a prison outfit." Statement of Material Facts ¶ 32.  However, these are not within the common understanding of the meaning of "criminal records" and, in any event, there is no indication of unlawful dissemination by the DOJ.

**IV.     Miscelleneous Motions**

The Court now turns to the numerous miscellaneous motions the Sieverdings have filed. Some are voluminous and vague; at times, what they seek is simply non-existent.  For the reasons that follow, all of the motions will be denied.

The Court denies the motion for leave to file corrected docketed material, ECF No. 3, and the motion for decision on related cases, ECF No. 6, on grounds that the motions are now mooted, having already been resolved by subsequent docket activity and action.  The motion to use Existing ECF Account, ECF No. 2, is also denied.  Contrary to the plaintiffs' contentions,

ECF access is not a "due process right" but is granted at the discretion of the Court. See LCvR 5.4. The Sieverdings have previously requested access to ECF, and those requests have been denied. See Sieverding v. Am. Bar Ass'n, 05-cv-1283, ECF Nos. 4, 76 & 79 (D.D.C.). With respect to the motion that the Court take "judicial notice of adjudicative fact under Rule 201(d)" that the Federal Register does not contain, inter alia, any use of the phrases "civil bench warrant" or "civil contempt of court commitment," the Court also denies the motion as moot, having disposed of all of Sieverding's claims.

The Sieverdings also move for a court order to have the DOJ "provide a list of the documents released to Plaintiffs in July 2007" pursuant to the Freedom of Information Act ("FOIA"), ECF No. 20. The DOJ asserts that it has no such list. See Opp'n to Motion for Court Order to Provide a List at 2; Declaration of William E. Bordley ("Bordley Decl.") ¶ 7, ECF No. 23-1 (Aug. 15, 2011). Nor does the DOJ have an obligation to generate such a list. See Krohn v. Dep't of Justice, 628 F.2d 195, 197-98 (D.C. Cir. 1980). Hence, that motion will be denied.

The motion for a more definite statement seeks "a court order requiring DOJ to answer the following questions." See ECF No. 25. These questions are fashioned as interrogatories and include requests for admissions and for documents. However, the Court has not ordered discovery and finds no ambiguity from the DOJ's filings at ECF Nos. 16, 21, 22, and 23 to make clarification necessary. Finally, the Court denies the "dispositive motion to impeach DOJ's witnesses and counsel and find DOJ in default of damage claims for unauthorized possession of the Sieverdings' First Amendment Records," ECF No. 34, and the motion for hearing, to expedite, and to join the prior motion, ECF No. 35. The reliance on Rule 607 is inapplicable here, because there are no witnesses to impeach. To the extent that the motion raises issues

relating to their FOIA requests and claims, that aspect of the motion is either premature or being resolved by another court, as the Sieverdings admit that they have previously filed FOIA actions raising the same types of arguments in the Eastern District of Virginia.  See also Mot. to Impeach ¶ 1; Bordley Decl. ¶ 10  Accordingly, ECF No. 34, and the Sieverdings' related motion, ECF No. 35, requesting a hearing and to expedite the resolution of the motion, will be denied.

## CONCLUSION

For the foregoing reasons, the Court will grant the Department's motion to dismiss in part or in the alternative for partial summary judgment.  It will deny the Sieverdings' motion for partial summary judgment.  Finally, it will deny all the other pending motions that have been filed by them.  A separate order accompanies this Memorandum Opinion.

**SO ORDERED.**

                                                  /s/
                                      JOHN D. BATES
                               United States District Judge

Dated: March 12, 2012